**E-Filed 9/6/05**

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| POLIMASTER LTD., NA&SE TRADING CO., LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>RAE SYSTEMS, INC.,<br><br>Defendant. | Case Number 05-01887-JF<br><br>ORDER[1] DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION<br><br>[Docket No. 30] |

Plaintiffs Polimaster Ltd. ("Polimaster") and Na&Se Trading Co., Limited ("Na&Se") move for a preliminary injunction. The motion is opposed by Defendant RAE Systems, Inc. ("RAE"). Having considered the briefs, relevant evidence, and the arguments of counsel at the hearing on August 26, 2005, the Court will deny the motion for the reasons set forth below.

## I. BACKGROUND

Polimaster engages in the manufacture and sale of instruments and components used to detect various types of ionizing radiation. Na&Se is engaged in the business of licensing the rights for proprietary information and industrial intellectual property to be used in foreign countries. RAE is engaged in the development, manufacture and sale of environmental safety

---

[1] This disposition is not designated for publication and may not be cited.

1    monitoring devices.  Its original emphasis was on gas-detection technology, but it recently has

2    entered the market for radiation detection devices.

3    **A.**    **Contractual Agreements Between the Parties**

4         In an effort to expand its business to include the radiation detection market, RAE entered

5    into discussions with Plaintiffs in the fall of 2002.  On January 15, 2003, Polimaster, Na&Se and

6    RAE entered into an agreement entitled "Nonexclusive License for Proprietary Information

7    Usage" ("License Agreement").  The License Agreement enabled RAE to manufacture and

8    distribute four Polimaster radiation monitor instruments in the United States and China.[2]  In

9    addition, the License Agreement required RAE to pay a seven percent royalty to Na&Se on each

10    subsequent sale of a licensed product.[3]  The License Agreement provides in relevant part as

11    follows:

12

13       1.  Terms and Definitions

14           1.2  "Proprietary Information" is a set of Engineering and
Technical documentation as well as manufacture secrets that in the

15           aggregate with the unique components is necessary and sufficient
for manufacture of the "License Products" (Appendix 2: List of
Proprietary Information);

16

17           1.3  "Unique Components" is the set of modules, parts and
electronic components with the software, which in the aggregate

18           with the "Proprietary Information" is necessary and sufficient for
manufacture of the "License Products" (Appendix 3: List of
Unique Components);

19

20           1.5  "Confidentiality" is observance of the measures for prevention
of accidental or deliberate disclosure of the knowledge related to
"Proprietary Information" and "Unique Components" to third

21           parties;

22       5.  Obligations and Responsibility

23           5.3  The Licensee shall have no right to use the "Proprietary
Information" in other devices developed by him without the

24

25       [2] The four Polimaster products were the Gamma Pager PM1703M, Gamma-Neutron

26    Pager PM1703GN, Pocket Gamma-Neutron Monitor PM1401GN, and Hand-Held Gamma-
Neutron Monitor PM1710GN.

27

28       [3] Although the agreement provides that royalties on Polimaster products are to be paid to
Na&Se, the precise nature of the relationship between Polimaster and Na&Se is unclear.

2

1    Licensor's written consent;

2

3    8. Confidentiality

4    8.1  The Parties shall be bound to keep "Confidentiality" of the received from the Licensor "Proprietary Information", information appeared in connection with the present Agreement that refers to

5    the "License Products" manufacture;

6    The parties shall take all the measures necessary to prevent complete and partial disclosure of the specified data or making

7    them available to the third parties without a mutual agreement;

8    8.2  Only those people from the Licensee's enterprises staff and his cooperative partners that deal directly with manufacture of the

9    "License Products" shall be aware of the presented "Proprietary Information" or its part.

10

11    On the same date, Polimaster and RAE entered into a second agreement entitled

12    "Product and Component Buy/Sell Agreement" ("Buy/Sell Agreement").  Pursuant to the

13    Buy/Sell Agreement, RAE was to buy from Polimaster components necessary for the

14    manufacture of radiation monitor instruments.  In addition, RAE was to complete the

15    manufacture and/or subassembly of the radiation monitor instruments and sell the finished

16    products to Polimaster.  With respect to confidentiality, the Buy/Sell Agreement provides as

17    follows:

18

19    10. Confidentiality

20    10.1  The parties shall undertake to keep confidentiality with respect to the received from the other Party information, knowledge and documents concerning the present Agreement and

21    its appendixes.

22    10.2  The parties guarantee that only those people from the parties' enterprises staff that deal directly with the fulfillment of the

23    obligations provided for in the present Agreement will be aware of the above-mentioned information.

24

25    **B.    RAE's Alleged Breach of Contract and Misappropriation of Trade Secrets**

26    Following execution of the foregoing agreements, Polimaster provided engineering and

27    technical documentation to RAE pursuant to the terms of the License Agreement.  In addition,

28    Polimaster provided training to three RAE engineers regarding the manufacturing process at its

3

1    office in Minsk, Belarus.  In 2003 and 2004, Polimaster received information that suggested that

2    RAE had disclosed and misappropriated its proprietary technology in an effort to develop and

3    manufacture its own radiation detection device.  For instance, an employee of one of Polimaster's

4    suppliers informed Polimaster that RAE was inquiring as to whether the supplier could produce

5    and sell to RAE the same type of CsI (Tl) (Cesium Iodide) crystals that the supplier was

6    manufacturing for Polimaster.  Plaintiffs contend that the combination of this specific type and

7    size of crystal with Polimaster's manufacturing techniques and technical data was subject to the

8    confidentiality and restricted use provisions of the Buy/Sell Agreement and License Agreement.

9    Also, on January 18, 2004, Polimaster received an e-mail from Shuping Yang of RAE, inquiring

10   as to where Polimaster had obtained certain other types of crystals used in the manufacture of its

11   radiation detector.  Plaintiffs assert that Mr. Yang had no authority under the agreements to

12   possess such knowledge.  Finally, in or around July 2004, RAE stated its desire to manufacture

13   independently the "Unique Components" that it had been purchasing from Polimaster under the

14   Buy/Sell Agreement.  Polimaster did not agree to this proposed amendment.

15          On January 25, 2005, RAE issued a press release announcing that it was taking orders for

16   the GammaRAE II, its new portable radiation detection product, with shipment beginning in

17   April 2005.  Plaintiffs contend that the GammaRAE II purports to serve the same purpose as one

18   of the licensed products under the Buy/Sell Agreement.  Plaintiffs argue specifically that

19   examination of the GammaRAE II reveals that its internal Gamma radiation detector block has

20   the identical outward and internal unique characteristics as the Gamma radiation detector block

21   in the Gamma Pager PM1703M, a product provided to RAE pursuant to the parties' agreements.

22   Plaintiffs contend that RAE's development and sale of the GammaRAE II constitutes a breach of

23   the License Agreement and a violation of the California Uniform Trade Secrets Act ("UTSA"),

24   Cal. Civ. Code § 3426 *et seq*.

25          RAE claims that the release of the GammaRAE II was the result of independent research

26   efforts, and that it did not misappropriate Plaintiffs' "Proprietary Information" or disclose

27   "Confidential" information to third parties.  Moreover, RAE asserts that the information at issue

28   was already in the public domain when Plaintiffs obtained it, and became more readily available

4

as a result of Polimaster's failure to safeguard it.

RAE maintains that it adopted a dual approach to entering the radiation detection market: while Dr. Peter Hsi, Vice President of Technology, and a team of nuclear engineers initiated the development of radiation detectors in early 2002, RAE simultaneously explored the possibility of immediate entry into the market as a manufacturer of detectors developed by other parties. During the negotiations with Plaintiffs in the fall of 2002, RAE sought to understand and evaluate the Gamma Pager PM1703M device.  On November 3, 2002, Hong Tao Sun, Vice President of Engineering, toured the Polimaster manufacturing facilities in Minsk, Belarus.  Dr. Sun was not asked to sign a confidentiality agreement regarding information revealed to him during the tour.[4]  Additionally, on November 13, 2002, RAE contracted to purchase fifty Gamma Pager PM1703M devices from Polimaster, with no restriction or other provision addressing confidentiality or proprietary information.   RAE contends that by the second half of 2002, Dr. Hsi had identified parts suppliers and purchased the component parts needed to build a radiation detector prototype.

RAE asserts that it successfully engineered a portable radiation detection prototype on February 5, 2003, less than a month after executing the License Agreement and Buy/Sell Agreement with Plaintiffs.  RAE received Polimaster's engineering and technical documentation on February 27, 2003, and received training from Polimaster concerning the manufacturing process on May 24, 2003.  By October 2003, RAE had refined its portable radiation detection prototype for the purpose of integrating it into its existing portable chemical detector product, the AreaRAE.  The technology was then further enhanced for use in, and was eventually unveiled as, the GammaRAE II, a portable radiation detector.

Finally, RAE argues that Plaintiffs exaggerate the similarities between the GammaRAE II and the Gamma Pager PM1703M device and the significance of any such similarities.  It claims

---

[4] At one point, the Polimaster representatives stated that Polimaster considered all information pertaining to manufacture of its products to be protected "proprietary information." Dr. Sun explained that RAE did not agree that publicly available information was protected.  Dr. Sun also declined Polimaster's offer to enter into a non-compete agreement.

5

1    that the GammaRAE II was developed based upon publicly available information and without

2    Plaintiffs' "Proprietary Information."

3    **C.    The Present Action**

4         On May 9, 2005, Plaintiffs filed the instant action asserting claims for breach of contract,

5    misappropriation of trade secrets and unfair business practices.  RAE filed an answer on June 15,

6    2005.  Both the License Agreement and the Buy/Sell Agreement state that in the case of a dispute

7    between the Licensor and the Licensee under the terms of the agreements, the parties will attempt

8    to resolve the dispute in arbitration.  The arbitration clauses do not provide expressly for

9    provisional remedies.  Plaintiffs filed the present motion on June 17, 2005, requesting issuance of

10   a preliminary injunction (1) prohibiting RAE from selling and/or distributing the GammaRAE II

11   and any other products that use Plaintiffs' "Proprietary Information," and (2) prohibiting RAE

12   from making any additional sales of licenced products that it may have in its possession because

13   of its breach of the terms of the Buy/Sell Agreement.  Plaintiffs request that the preliminary

14   injunction remain in force until the parties' disputes are resolved in arbitration.  Arbitration

15   proceedings have not yet begun.

16                                    **II. LEGAL STANDARD**

17        A party seeking a preliminary injunction must show either (1) a likelihood of success on

18   the merits and the possibility of irreparable injury, or (2) the existence of serious questions going

19   to the merits and the balance of hardships tipping in the movant's favor.  *Roe v. Anderson*, 134

20   F.3d 1400, 1401-02 (9th Cir. 1998); *Apple Computer, Inc. v. Formula Int'l, Inc.*, 725 F.2d 521,

21   523 (9th Cir. 1984).  These formulations represent two points on a sliding scale in which the

22   required degree of irreparable harm increases as the probability of success decreases.  *Roe*, 134

23   F.3d at 1402.

24                                      **III. DISCUSSION**

25        Based upon the facts presented, the Court concludes that Plaintiffs have not demonstrated

26   a likelihood of success on the merits and have failed to establish that they will suffer irreparable

27   injury in the absence of an injunction.  Moreover, although Plaintiffs have raised serious

28   questions going to the merits, the balance of hardships does not weigh in Plaintiffs' favor.

Case No. 05-01887-JF
ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
(JFEX1)

1    **A.    Probable Success on the Merits**

2         **1.    Misappropriation of Trade Secrets**

3         Plaintiffs contend that by engaging in the manufacture and sale of the GammaRAE II,

4    RAE has misappropriated Plaintiffs' trade secrets in violation of the UTSA.  To establish a trade

5    secret claim under the UTSA, Plaintiffs must demonstrate that the allegedly misappropriated

6    information has independent economic value to competitors and that reasonable efforts were

7    taken to maintain its secrecy.  Cal. Civ. Code § 3426.1(d); *Religious Tech. Ctr. v. Netcom On-*

8    *Line Commun. Servs.*, 923 F. Supp. 1231, 1250-51 (N.D. Cal. 1995).  Plaintiffs have not

9    demonstrated that they are likely to meet this standard.

10        In order to qualify as a trade secret, the information "must be secret, and must not be of

11   public knowledge or of a general knowledge in the trade or business."  *Kewanee Oil Co. v.*

12   *Bicron Corp.*, 416 U.S. 470, 475 (1974).  Plaintiffs contend that RAE was provided with

13   technology and manufacturing secrets pursuant to the terms of the License Agreement.  However,

14   many of the product specifications disclosed to RAE, such as the type of crystal detector, the

15   alarm algorithm, the time of calibration and the general components of the detector block, are

16   contained in the Operating Manual for Gamma Pager PM1703M.  Plaintiffs do not dispute that

17   the manual is made available to the public on the Polimaster website without restriction.

18   Plaintiffs' evidence of misappropriation is similarly inadequate to the extent that Plaintiffs claim

19   that their trade secrets include the "know-how" required to produce a viable radiation detection

20   device.  Plaintiffs have not adequately identified specific manufacturing procedures employed by

21   RAE that fall within this category, and instead focus entirely on the similarities in the parties'

22   finished products.

23        RAE has offered evidence to suggest that Plaintiffs may not have taken appropriate

24   measures to safeguard the confidentiality of its "Proprietary Information."  Polimaster's

25   agreement to allow RAE engineers to tour its manufacturing facility on November 3, 2002 and its

26   decision to sell fifty detection devices without entering into any agreements regarding

27   confidentiality suggest that Plaintiffs may not have undertaken reasonable efforts to safeguard

28   their purported trade secrets.  As a result, Plaintiffs have not made a clear showing that they are

1    likely to prevail on the merits of their trade secrets claim.

2        **2.    Breach of Contract**

3        Plaintiffs argue that RAE has breached Section 5.3 of the License Agreement by using

4    Plaintiffs' "Proprietary Information," without their consent, in order to manufacture and sell a

5    competing radiation detection device.  Plaintiffs claim specifically that the GammaRAE II

6    incorporates information from Plaintiffs' technical documents— information that RAE agreed

7    was encompassed within the definition of "Proprietary Information" under the License

8    Agreement.

9        In order to establish a breach of contract claim, a plaintiff must demonstrate the

10   following: (1) a contract; (2) plaintiff's performance or excuse for non-performance; (3)

11   defendant's breach; and (4) the resulting damages to plaintiff.  *Reichert v. General Ins. Co. of*

12   *Am.*, 68 Cal. 2d 822, 830 (1968).  The Court concludes that Plaintiffs have not made a clear

13   showing that RAE breached the contract by utilizing Plaintiffs' technical documents in order to

14   develop the GammaRAE II.  In fact, RAE offers evidence to the contrary, noting that Dr. Hsi and

15   RAE engineers began developing a radiation detection prototype in the fall of 2002 based on

16   independent research and publicly available information.  In light of the fact that much of the

17   information was publicly available, Plaintiffs' discussion of the many similarities between the

18   Gamma Pager PM1703M and the GammaRAE II is insufficient to establish that RAE relied upon

19   Plaintiffs' technical documentation.  In any event, it would be unreasonable for the Court to

20   construe the term "Proprietary Information" to include information that was made publicly

21   available by Plaintiffs.

22       In addition, Plaintiffs assert that RAE breached its obligations under the License

23   Agreement and the Buy/Sell Agreement by disclosing "Proprietary Information" to third parties.

24   Plaintiffs have failed to present sufficient evidence to support this allegation.  Indeed, Plaintiffs

25   have not provided the Court with any specific information disclosed by RAE to suppliers, nor

26   have they demonstrated that RAE employees possessed information governed by the

27   confidentiality provisions of the agreements between the parties.  Under these circumstances,

28   Plaintiffs have failed to present a clear showing that they are likely to prevail on the merits of

8

1   their breach of contract claim.

2         **3.    Unfair Competition**

3        Based on RAE's alleged misappropriation of trade secrets, its alleged breach of the terms

4   of the License Agreement and Buy/Sell Agreement, and its subsequent sale of the GammaRAE

5   II, Plaintiffs claim that RAE has engaged in unfair competition in contravention of California

6   Business and Professions Code § 17200.  However, absent an adequate showing that Plaintiffs

7   are likely to prevail on the misappropriation of trade secrets and breach of contract claims,

8   Plaintiffs' unfair competition claim does not independently support the issuance of injunctive

9   relief.[5]

10   **B.   Irreparable Injury**

11        Given that Plaintiffs have made a weak showing as to likelihood of success on the merits,

12   Plaintiffs must present substantial evidence of irreparable injury.  A party seeking preliminary or

13   permanent injunctive relief must demonstrate "irreparable injury" and "the inadequacy of legal

14   remedies." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).  "Mere injuries, however

15   substantial, in terms of money, time and energy necessarily expended . . . are not enough."

16   *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (quoting *Virginia Petroleum Jobbers Ass'n v. FPC*,

17   259 F.2d 921, 925 (1958)).  Here, even if Plaintiffs were able to establish a likelihood of success

18   on the breach of contract claim, the Court is not satisfied that Plaintiffs' claim warrants the

19   issuance of a preliminary injunction given that Plaintiffs' injury is compensable by money

20   damages.

21        With respect to the trade secrets claim, Plaintiffs rely upon this Court's statement that

22   "[u]se or disclosure of trade secrets is an irreparable harm which will support the granting of a

23   preliminary injunction." *Teleflora, LLC v. Florists' Transworld Delivery, Inc.*, 2004 WL

24   1844847 at *6 (N.D. Cal. 2004) (citing *AT & T Communications of California v. Pacific Bell*,

25   1996 WL 940836 at *9 (N.D. Cal. 1996)).  However, the perceived strength of the plaintiffs'

26

27

28        [5] Even though the statute does not require Plaintiffs to show a likelihood of irreparable injury, the weakness of Plaintiffs' showing on the merits is determinative.

1    trade secret claims in *AT & T* provided the basis for the Court's statement.  Allegations of trade

2    secret misappropriation, without substantial underlying evidence, cannot support the issuance of

3    an injunction.  *See AT & T*, 1996 WL 940836 at *10 ("As the court *has found* that defendants are

4    misappropriating plaintiffs' trade secrets, the further misappropriation of those secrets constitutes

5    an immediate and irreparable harm which will support the issuance of an injunction.") (emphasis

6    added).  Here, the Court has concluded that Plaintiffs have not made a prima facie showing that

7    RAE misappropriated Plaintiffs' trade secrets.

8    **C.    Balance of Hardships**

9        Although Plaintiffs have not demonstrated that they are likely to succeed on the merits of

10   their claims, the Court agrees that Plaintiffs have raised serious questions going to the merits.  An

11   injunction then may be appropriate if Plaintiffs demonstrate that the balance of hardships tips in

12   their favor.  *Roe,* 134 F.3d at 1401-02; *Apple Computer,* 725 F.2d at 523.

13       Plaintiffs argue that in the absence of an injunction, RAE will be permitted to continue to

14   sell radiation detection monitors at artificially low prices because RAE did not incur the

15   significant research and development costs otherwise required.  RAE's sale of such monitors

16   allegedly will damage Polimaster's commercial reputation while simultaneously enabling RAE to

17   increase its market share.  Moreover, Plaintiffs contend that issuance of an injunction will

18   preserve the status quo, given that RAE will be required to adhere to its agreements with

19   Plaintiffs.  RAE replies that if an injunction is entered, it will be forced to stop its ongoing sales,

20   negotiations, and deliveries of GammaRAE II, and they will lose revenues from unfilled orders

21   and lost anticipated sales.  Moreover, the existence of unfilled orders might result in litigation

22   against RAE, and would strike a blow to its reputation and stock price.

23       The Court concludes that the balance of hardships tips in favor of RAE.  The present

24   record does not support Polimaster's conclusory statement that it will suffer damage to its

25   commercial reputation.  RAE has presented evidence that issuance of an injunction would result

26   in lost revenue of $420,000 in FY 2005 and would adversely impact the position of third parties

27   that have contracted with RAE to purchase its device.  The Court does not foresee a reasonable

28   likelihood that Plaintiffs' asserted "Proprietary Information" will be disclosed in a manner more

10

1  broad or inconsistent with prior public disclosure.  As a result, the Court is inclined to maintain

2  the relative position of the parties pending the conclusion of arbitration.

3       Accordingly, the Court will deny Plaintiffs' motion for preliminary injunction.

4  **IV. ORDER**

5       Plaintiffs' motion for preliminary injunction is DENIED.

6

7  DATED:   September 6, 2005

8

9

10                      /s/ electronic signature authorized

                    JEREMY FOGEL

11                      United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11

Case No. 05-01887-JF
ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
(JFEX1)

This Order has been served upon the following persons:


Counsel for Plaintiffs

kevin@gardenlawfirm.com

Glivaich@dnlc.net



Counsel for Defendant

John.Flynn@LW.com

Ashley.Bauer@LW.com

Randall.Kim@LW.com

Gia.Casteel-Brown@LW.com

Sarah.Bergmueller@LW.com

Chona.Watson@LW.com

Case No. 05-01887-JF
ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
(JFEX1)