*E-Filed 1/23/09*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| POLIMASTER LTD and NA&SE TRADING CO. LTD., | Case Number C 05-1887 |
| Plaintiffs, | [PROPOSED] AMENDED ORDER[1] CONFIRMING THE ARBITRATION AWARD |
| v. | [re: docket no. 100] |
| RAE SYSTEMS, INC., | |
| Defendant. | |

## I.  BACKGROUND

Polimaster Ltd. ("Polimaster") is a limited liability company formed in the Republic of Belarus engaged in the manufacture and sale of instruments and components used to detect various types of ionizing radiation.  Na&Se Trading Co., Limited ("Na&Se") is a corporation organized under the laws of Cyprus engaged in the business of licensing the rights to proprietary information and industrial intellectual property to be used in foreign countries.  RAE Systems, Inc. ("RAE") is a Delaware corporation with its principal place of business in San Jose, California engaged in the development, manufacture and sale of environmental safety monitoring devices.  Its original emphasis was on gas-detection technology, but it recently has entered the

---

[1]    This disposition is not designated for publication and may not be cited.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. C05-01887
[PROPOSED] AMENDED ORDER CONFIRMING THE
ARBITRATION AWARD
(JFLC1)

1

1   market for radiation detection devices.

2   On January 15, 2003, Polimaster, Na&Se and RAE entered into an agreement entitled

3   "Nonexclusive License for Proprietary Information Usage" ("License Agreement").  The License

4   Agreement enabled RAE to manufacture and distribute four Polimaster radiation monitor

5   instruments in the United States and China.[2]  In addition, the License Agreement required RAE

6   to pay a seven percent royalty to Na&Se on each subsequent sale of a licensed product.[3]  On the

7   same date, Polimaster and RAE entered into a second agreement entitled "Product and

8   Component Buy/Sell Agreement" ("Buy/Sell Agreement").  Pursuant to the Buy/Sell Agreement,

9   RAE was to buy from Polimaster components necessary for the manufacture of radiation monitor

10  instruments.  In addition, RAE was to complete the manufacture and/or subassembly of the

11  radiation monitor instruments and sell the finished products to Polimaster.  The Buy/Sell

12  Agreement contained a confidentiality clause that required that all information, knowledge and

13  documents exchanged between the parties be kept confidential.  Both the License Agreement and

14  the Buy/Sell Agreement provided that disputes between the parties would be submitted to

15  binding arbitration.  The License Agreement specifically provides that "[i]n the case of failure to

16  settle the mentioned disputes by means of negotiations they should be settled by means of

17  arbitration at the defendant's side."  Neither agreement specifies a choice of law.

18  In 2003 and 2004, disputes arose between Polimaster and RAE regarding RAE's

19  exclusive right under the License Agreement to manufacture instruments pursuant to an order

20  placed by the United States Coast Guard as well as RAE's duties under the confidentiality

21  clause.  Pursuant to the arbitration clauses in the parties' agreements, Polimaster and Na&Se

22  initiated arbitration at RAE's site in California.  The parties agreed to use JAMS Comprehensive

23  Arbitration Rules & Procedures.  Orick Declaration, Exhibit C.

24  On July 6, 2006, Polimaster and Na&Se filed a joint demand for arbitration asserting four

25

26  [2]   The four Polimaster products were the Gamma Pager PM1703M, Gamma-Neutron Pager
27        PM1703GN, Pocket Gamma-Neutron Monitor PM1401GN, and Hand-Held Gamma-Neutron
        Monitor PM1710GN.

28  [3]   Although the agreement provides that royalties on Polimaster products are to be paid to
        Na&Se, the precise nature of the relationship between Polimaster and Na&Se is unclear.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. C05-01887
[PROPOSED] AMENDED ORDER CONFIRMING THE
ARBITRATION AWARD
(JFLC1

2

1  claims:  (1) unlawful disclosure of confidential and proprietary information; (2) misappropriation

2  of trade secrets; (3) unfair trade practices; and (4) breach of the Buy/Sell agreement.  On August

3  7, 2006, RAE filed an answer which also asserted counterclaims arising out of the transactions

4  involved in the complaint.  In response to the counterclaims, Polimaster argued that the

5  Arbitrator did not have jurisdiction over the counterclaims because, under the terms of the

6  License Agreement, claims must be brought at the defendant's location and because RAE failed

7  to negotiate in good faith prior to bringing its claims.  The parties could not agree on the proper

8  body of procedural law to apply in settling this dispute.  Polimaster argued that the Federal Rules

9  of Procedure should apply, and RAE argued that the Arbitrator should follow California law

10  and/or JAMS Comprehensive Arbitration Rules.  Orick Declaration, Exhibit G.  Finding that the

11  contract was silent on the issue of whether counterclaims could be brought at the defendant's

12  location, the Arbitrator analyzed the question under California law, the Federal Rules and the

13  relevant JAMS provisions and denied Polimaster's motion to dismiss RAE's counterclaims.  *Id.*

14  Hearings took place between March 5 and March 16, 2007.  The parties agreed to a post-

15  hearing briefing schedule that allowed each party to file two simultaneous briefs.  However, the

16  Arbitrator subsequently allowed RAE to submit a third brief to address arguments pertaining to

17  the counterclaims raised for the first time in Polimaster's reply brief.  Garden Declaration,

18  Exhibit 4.  On July 5, 2007, the Arbitrator issued an interim award, which was followed by a

19  final award dated September 20, 2007.  On October 5, 2007, RAE filed a motion to confirm the

20  arbitration award.  Polimaster and Na&Se oppose this motion and move to vacate the award.

21  This Court heard oral argument on December 7, 2007.

22  **II.  LEGAL STANDARD**

23  Under 9 U.S.C. § 207, a party to a foreign arbitration may apply to federal district court

24  "for an order confirming the award as against any other party to the arbitration."  "The district

25  court has little discretion: the court *shall* confirm the award unless it finds one of the grounds for

26  refusal or deferral of recognition or enforcement of the award specified in the New York

27  convention."  *Ministry of Def. Islamic Republic of Iran v. Gould, Inc.*, 969 F.2d 764, 770 (9th

28  Cir. 1992).  The grounds for vacating an award under the New York Convention are as follows

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. C05-01887
~~[PROPOSED]~~ AMENDED ORDER CONFIRMING THE
ARBITRATION AWARD
(JFLC1

3

1.  Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:

(a)  The parties to the agreement referred to in article II were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or

(b)  The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or

(c)  The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or

(d)  The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or

(e)  The award has not yet become binding, on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

2.  Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:

(a)  The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or

(b)  The recognition or enforcement of the award would be contrary to the public policy of that country.

These provisions are construed narrowly "[b]ecause a general pro-enforcement bias informed the convention." *Id.*

Section 10(a) of the Federal Arbitration Act sets forth four grounds on which an arbitration award may be vacated:

(1)  where the award was procured by corruption, fraud, or undue means;

(2)  where there was evident partiality or corruption in the arbitrators, or either of them;

(3)  where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. C05-01887
[PROPOSED] AMENDED ORDER CONFIRMING THE
ARBITRATION AWARD
(JFLC1

4

1    (4)  where the arbitrators exceeded their powers, or so imperfectly executed them
2    that a mutual, final, and definite award upon the subject matter submitted was not made.

3    "These Grounds afford an extremely limited review authority, a limitation that is designed to

4    preserve due process but not to permit unnecessary public intrusion into private arbitration

5    procedures."  *Kyocera Corp. v. Prudential-Bache Trade Servs.*, 341 F.3d 987, 998 (9th Cir.

6    2003).

7                              **III.   DISCUSSION**

8        1.    Counterclaims

9        Polimaster and Na&Se argue that pursuant to the FAA, the award should be vacated

10   because the Arbitrator exceeded his authority by allowing RAE to assert counterclaims at its own

11   site despite the requirement in the arbitration agreements that claims be brought at the

12   responding party's location.  "[A]rbitrators exceed their powers ... not when they merely

13   interpret or apply the governing law incorrectly, but when the award is completely irrational."

14   *Kyocera*, 341 F.3d at 997 (internal quotation omitted).  When a court reviews an arbitration

15   award on this ground:

16            [t]he rule is, though the arbitrators' view of the law might be open
             to serious question, an award which is one within the terms of the
17            submission, will not be set aside by a court for error either in law
             or fact if the award contains the honest decision of the arbitrators,
18            after a full and fair hearing of the parties.

19   *Coast Trading Co., Inc. v. Pac. Molasses Co.*, 681 F.2d 1195, 1198 (9th Cir. 1982).  Where the

20   party seeking to vacate the award has argued that the arbitrator exceeded his authority by

21   deciding issues outside of the scope of the agreement, the Ninth Circuit has explained that the

22   court "will not disturb an arbitration order so long as the arbitrator even arguably construed or

23   applied the contract and acted within the scope of his authority."  *Entm't Publ'ns, Inc. v. Ravet*, 7

24   Fed. Appx. 807, 808 (9th Cir. 2001).

25       Polimaster and Na&Se cite several cases for the proposition that courts must give effect

26   to clearly drafted forum selection clauses.  *See Snyder v. Smith*, 736 F.2d 409, 418 (7th Cir.);

27   *Felzen v. Andreas*, 134 F.3d 873 (7th Cir.); *KKW Entertainment, Inc. v. Gloria Jean's Gourment

28   Coffees Franchising Corp.*, 184 F.3d 42, 48-50 (1st Cir. 1999); *Nat'l Iranian Oil Co. v. Ashland*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO    Case No. C05-01887
[PROPOSED] AMENDED ORDER CONFIRMING THE              5
ARBITRATION AWARD
(JFLC1

1   *Oil, Inc.*, 817 F.2d 236, 330 (5th Cir. 1987).  These cases are inapposite.  While each of the cases

2   cited by Polimaster and Na&Se involves a well-defined forum selection clause, the License

3   Agreement does not address counterclaims.  Accordingly, the Arbitrator's conclusion that the

4   contract was silent on this issue meets the "arguably correct" standard.  Because there was no

5   clear agreement among the parties, it was appropriate for the Arbitrator to analyze the issue

6   under the JAMS rules as well as state and federal law, and his legal analyses were sound.  This

7   Court thus concludes that the Arbitrator did not exceed his authority under the FAA.[4]

8            This Court also concludes that the award may be confirmed in accordance with Article

9   V(1)(d) of the New York Convention, which requires that courts refuse to confirm an arbitration

10  award when "the arbitral procedure was not in accordance with the agreement of the parties."

11  The case of *China Nat'l Metal Prods. v. Apex Digital, Inc.*, 379 F.3d 796, 799 (9th Cir. 2004), is

12  particularly instructive.  China National involved an arbitration clause that was "indeterminate"

13  as to whether separate proceedings should be required to address both parties' claims.  After

14  Apex commenced arbitration against China National in Shanghai, China National commenced a

15  separate arbitration against Apex in Beijing.  The arbitration panel, using its own rules to

16  interpret arbitration agreements the mere silent on the subject of counterclaims, held that it

17  lacked authority to force China National to prosecute its claims as counterclaims in Shanghai and

18  allowed the two separate arbitrations to proceed.  In affirming the arbitration panel's decision,

19  the Ninth Circuit held that the arbitration panel "did not trump specific terms of the parties'

20  purchase orders by turning to its own rules because the arbitral clause did not resolve the parties

21  dispute itself."  *Id.*  at 801.  Although *China National* affirmed the propriety of two separate

22  proceedings and the arbitration in the instant case upheld a single proceeding, the principle is the

23  same: when the parties' agreement does not address the procedural question at hand, the

24  arbitrator's recourse to relevant procedural rules does not create a defense to enforcement under

25  Article V(1)(d) of the New York Convention.

26  _____

27  [4]   At oral argument Polimaster and Na&Se argued that under Cypris law counterclaims would
      not be regarded as part of the original dispute. While this argument perhaps suggest that there
28    was not a meting of the minds between parties, it was well within the Arbitrator's discretion
      to base his decision on this country's Federal Rules.

1      2.      Legal Basis for the Award

2              Polimaster also contends that the award should be vacated because there is no legal basis

3      for holding Polimaster liable for a breach of the Licensing Agreement.  However, "[the

4      arbitrator's] interpretation of the contract binds the court asked to enforce the award or set it

5      aside.  The court substitute even if convinced that the arbitrator's interpretation was not only

6      wrong, but plainly wrong."  *Kyocera Corp.*, 341 F.3d at 999.  The Ninth Circuit has explained

7      that judicial review of the merits of an arbitration award is limited to situations in which there

8      has been a "manifest disregard of the law:"

9                      The manifest disregard exception requires something beyond and
                       different from a mere error in the law or failure on the part of the
10                     arbitrators to understand and apply the law.  Accordingly, we may
                       not reverse an arbitration award even in the face of an erroneous
11                     interpretation of the law.  Rather, to demonstrate manifest
                       disregard, the moving party must show that the arbitrator
12                     understood and correctly stated the law, but proceeded to disregard
                       the same.
13

14     *Collins v. D.R. Horton, Inc.*, No. 05-15737, 2007 WL 2756956 at *3 (9th Cir. April 17, 2007).

15     Polimaster does not identify any legal reasoning in the arbitrator's written opinion as the basis

16     for its argument.  In fact, the question of Polimaster's liability under the license agreement

17     involved a finding of fact rather than a conclusion of law.  The Arbitrator found as follows:

18                     Polimaster claims that it was not a party to the License Agreement
                       (*which Polimaster signed*) but that is contradicted by Polimaster's
19                     judicial admissions in the Complaint it filed in the District Court
                       and its Demand for Arbitration.  The hearing testimony
20                     demonstrated that Polimaster was a party to the License
                       Agreement.
21

22     (emphasis added).  Because Polimaster has not satisfied its burden of proving a manifest

23     disregard for the law, the arbitration award will not be vacated on this ground.

24     3.      Efforts to Settle and Supplemental Briefing

25             Polimaster and Na&Se further contend that the Arbitrator exceeded his authority by

26     allowing the counterclaims to be arbitrated despite the fact that RAE had not made an adequate

27     effort to settle them and allowed RAE to file a supplemented brief.  The Supreme Court has held

28     that where arbitrability is contested on procedural grounds, federal courts should compel

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. C05-01887
[PROPOSED] AMENDED ORDER CONFIRMING THE
ARBITRATION AWARD
(JFLC1

7

1   arbitration and refer consideration of procedural issues to the arbitrator.  *See, e.g., Green Tree*

2   *Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S.

3   79, 85 (2002) (finding that a dispute over the applicable time limit on a party's power to invoke

4   arbitration should be adjudicated by an arbitrator); *Moses H. Cone Mem'l Hosp. v. Mercury*

5   *Const. Corp.*, 460 U.S. 1 (1983) (emphasizing that it is preferable for an arbitrator to decide

6   issues such as "waiver, delay, or a like defense to arbitrability"); *John Wiley & Sons v. Liginston*,

7   376 U.S. 543, 556-67 (1964) (holding that an arbitrator, not a judge, should determine the

8   procedural prerequisites to arbitration).  Courts in this jurisdiction have read this line of cases as

9   indicating that "[certain] types of disputes are generally beyond the purview of the judiciary.

10  Generally speaking, there is a presumption that courts should not decide procedural questions

11  relating to an arbitration agreement."  *Barragan v. Washington Mut. Bank*, No. 06-1646, 2006

12  WL 2479125 at *3 (N.D. Cal. Aug. 28, 2006).

13
14  > Numerous courts have noted a distinction between questions of procedure and questions of substantive arbitrability.  Arbitrators generally decide questions of procedure such as waiver, notice, and other conditions precedent to an obligation to arbitrate.  In contrast courts generally decide substantive arbitrability questions, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to particular dispute.
15
16
17

18  *World Group Sec. v. Ko*, No. 035005 MJJ (EDL), 2004 WL 1811145 at *2 (N.D. Cal. Feb. 11,

19  2004) (internal citations omitted).

20          Accordingly, this Court will not substitute its own assessment of the adequacy of RAE's

21  efforts to settle the counterclaims for the Arbitrator's determination.  Nor will the Court decide

22  independently whether it was appropriate for the Arbitrator to allow RAE to file a third post-

23  hearing brief.

24          4.      Consent

25          Finally, Polimaster and Na&Se contend that the award may not be confirmed because the

26  License Agreement did not contain any consent to the arbitration award being confirmed by a

27  Court.  The two provisions of the FAA that provide courts with authority to confirm arbitration

28  awards contain conflicting consent requirements.  9 U.S.C. § 207 instructs that "within three

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. C05-01887
[PROPOSED] AMENDED ORDER CONFIRMING THE
ARBITRATION AWARD
(JFLC1

8

1   years after an arbitral award falling under the Convention is made, any party to the arbitration

2   may apply to any court having jurisdiction under this chapter for an order confirming the award

3   as against any other party to the arbitration."  9 U.S.C. § 9 is more restrictive:

4           If the parties in their agreement have agreed that a judgment of the
            court shall be entered upon the award made pursuant to the
5           arbitration, and shall specify the court, then at any time within one
            year after the award is made any party to the arbitration may apply
6           to the court so specified for an order confirming the award.

7           In reconciling these two provisions, circuit courts have split with respect to the question

8   of whether consent is required.  *Compare Daihatsu Motor Co., Inc v Terrain Vehicles, Inc.*, 1992

9   WL133036 at *3 (N.D. Ill. 1992), *aff'd on other grounds*, 13 F.3d 196 (7th Cir. 1993) *with*

10  *Phoenix Aktiengesellshaft v. Ecoplas, Inc.*, 291 F.3d 433 436-38 (2d Cir. 2004).  The Ninth

11  Circuit has not addressed this issue.  However, they Court finds the Second Circuit's analysis to

12  be persuasive.  As that court Second Circuit has explained:

13          Congress implemented the Convention twelve years later
            by enacting Chapter 2 of the FAA, now codified at 9 U.S.C.
14          §§201-208.  The Convention's purpose was toe encourage the
            recognition and enforcement of commercial arbitration agreements
15          in international contracts and to unify the standards by which the
            recognition and enforcement of commercial arbitration agreements
16          to arbitrate awards are enforced in the signatory countries.
            Pursuant to 9 U.S.C. § 208, the pre-convention provisions of the
17          FAA- that is, the provisions of Chapter 1, 9 U.S.C. § 1-16-
            continue to apply to the enforcement of foreign arbitration awards
18          *except to the extent that chapter 1 conflicts with the Convention or
            Chapter 2.*
19

20          *Aktiengeselshaft*, 391 F.3d at 435.  Applying this reasoning, the court held that 207

21  preempts § 9.  In keeping with *Aktiengeselshaft*, this Court also holds that there is no consent

22  requirement.

23

24

25

26

27

28

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. C05-01887
[PROPOSED] AMENDED ORDER CONFIRMING THE
ARBITRATION AWARD
(JFLC1

9

## IV.   ORDER

Good cause therefor appearing, IT IS HEREBY ORDERED that the arbitration award is CONFIRMED.


DATED:  February 25, 2008.

AMENDED: January 23, 2009

_____

JEREMY FOGEL
United States District Judge

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. C05-01887
[PROPOSED] AMENDED ORDER CONFIRMING THE
ARBITRATION AWARD
(JFLC1

10